

81 Main Street, Suite 215 | White Plains, NY  10601
Tel:  914.686.4800 | Fax:  914.686.4824

KEVIN J. HARRINGTON, PARTNER
kharrington@homlegal.com

February 14, 2023

<u>Via ECF</u>
Hon. Jennifer H. Rearden
United States District Judge
500 Pearl Street
New York, NY  10007

  Re: <u>Sydney Hyman v. Andrew Fabbri and Jessica Cohen</u>-Case No. 19-civ. 10506 (JR)

Dear Judge Rearden:

  Harrington, Ocko & Monk LLP, represents the Plaintiff Sydney Hyman ("Plaintiff" or "Hyman"), in the above-referenced matter.  We submit this joint letter with Michael Murad Khan, Esq., Khan Johnson, LLP, counsel for the Defendant Andrew Fabbri ("Defendant" or "Fabbri"), pursuant to Your Honor's Order dated January 31, 2023 [Doc. # 154]:

**1.**  **The names of counsel and current contact information;**
  <u>Plaintiff</u>: HARRINGTON, OCKO & MONK, LLP, 81 Main Street, Suite 215, White Plains, New York 10601; (914) 686-4800; Kevin J. Harrington, Esq. [kharrington@homlegal.com]; Michael W. Freudenberg, Esq. [mfreudenberg@homlegal.com]

  <u>Defendant</u>: KHAN JOHNSON, LLP, 413 West 14th Street, Second Floor, New York, NY 10014, (212) 300-6582; Murad Michael Khan, Esq. [mkhan@kahnjohnson.com]; Aglaia Davis, Esq. [adavis@khanjohnson.com]

**2.**  **A brief statement of the nature of the claims and the principal defenses;**
  <u>Plaintiff's Claims</u>: This litigation relates to a three-alarm fire at a six-story condominium located at 51 Greene Street in SoHo Manhattan ("Condominium") on the evening of September 13, 2016 (the "Fire").  Plaintiff had owned, resided, and worked as an artist in Unit #3, that includes the entire third floor.  On the evening of the Fire, Defendant and his now wife Jessica Cohen ("Cohen") only, were on the private, fence enclosed, roof deck terrace that was part of the leased "6th Floor

Unit" rental property on the Condominium's roof (the "Terrace"). Videotape evidence preserved by the FDNY shows that Defendant entered the Terrace roof deck terrace at approximately 6:17 pm. Defendant thereafter engaged in smoking marijuana while on the Rooftop Terrace. Plaintiff further alleges that Defendant recklessly discarded and failed to fully extinguish the marijuana cigarette he was smoking prior to discarding it. Defendant exited the Terrace at approximately 6:34 pm. FDNY records and investigative reports from Fire Marshals show that the FDNY performed a complete investigation into the Fire, and utilized video obtained by the FDNY from a neighboring building. The video shows that at 7:18 pm, smoke and fire are visible on the Terrace, in the exact and specific area of the Terrace where the Defendant had been engaging in smoking activity. After the Fire was extinguished, the cause was investigated by the FDNY, whereby investigators came to a determination that the Fire originated on the roof deck, in the enclosed area where Defendant had exclusive access, and where the Defendant was seen engaging in smoking activity in the exact and specific area where the Fire originated. FDNY's investigation concluded that the cause of the Fire was "smoking" due to the "careless discard of smoking materials." FDNY records, including a rooftop video obtained by the FDNY, clearly shows that only the Defendant and Cohen were on the roof prior to the Fire, and that on numerous occasions wisps of smoke can be seen coming from the area where the Defendant was sitting in the exact area where the Fire started. Defendant can be seen moving his hand to his mouth as if smoking, with wisps of smoke appearing moments later. Defendant admitted at his deposition that he was smoking marijuana on the roof on the evening of the Fire. There is no genuine question of liability here. Plaintiff suffered significant damages to her third-floor condominium unit, her roof property, her basement property, her personal property, her work property, her two businesses: ArtReinvented Studio and TomorrowToday, and other related damages. Plaintiff was forced to seek both alternative living and work arrangements at a significant cost. Because of this financial strain, Ms. Hyman will have no choice but to rent out her loft for the first time ever, as soon as it is rebuilt, in order to pay off extensive loans to rebuild.

<u>Defendant's Defenses</u>. The Defendant maintains that this is a highly defensible case, from liability and into damages. First, while it is undisputed that the Fire resulted from the Defendant's discarded smoking utensil, it is far from settled that the Defendant was negligent. The Plaintiff's own fire expert admitted that it was more or less a "perfect storm" that led to the blunt catching ablaze; and maintained that the responsible method of discard was removing the "cherry" from the center of the smoking device before crushing it out. It is the Defendant's argument that "reasonable care" does not involve a smoker removing the cherry from a cigarette or blunt before discarding it.

Beyond liability, however, the Plaintiff's damages are demonstrably overstated, overblown, and, in many cases, costs that she either would have spent to live regardless of the Fire, or that she sought and received recompense before from her insurer. The biggest flaw in the Plaintiff's case is, in fact, her credibility. As loose examples proceeding which are many more, the Plaintiff claimed that all of the subway rides she took after the Fire were chargeable to the Defendant; that her regular laundry and food costs were billable to the Defendant; and that her moneyless business would have been suddenly profitable had the Fire not occurred. The Defendant faulted the Defendant for things such as her inability to get Patent Applications filed, when her own records demonstrate that she had filed for extensions in the past. The Defendant's patent expert testified that the Patents that the Plaintiff claims were very valuable were in fact worth little if anything.

The Plaintiff's credibility is probably most irreparably injured by the fact that, years before the Fire, she had submitted eerily similar claims to her insurance company arising from a water issue that caused her to leave her apartment. The Plaintiff drafted narratives in the third person in an attempt to get reimbursed for every day costs of living following that event, just as she would do following the Fire. Her attempts to wrest money from her insurer—akin to her attempts to wrest money from the Defendant—exceeded reasonable bounds of even arguable damages. One

of her "damages" post-Fire, in fact, was her inability to participate in the Women's March in Washington following the 2016 Election.

The Defendant also believes that many of the Plaintiff's "damages" documents should be precluded from admission at trial due to the Plaintiff's blatant discovery violations. While she had a "drop dead" date by which she was to submit all of her damages materials, the Plaintiff blew that deadline. The Defendant plans to seek an appropriate evidentiary ruling on this issue prior to the start of trial.

3. **A brief explanation of why jurisdiction and venue lie in this Court.**
   Diversity of citizenship pursuant to 28 U.S.C. §1332. Defendant was a resident and citizen of the State of New Jersey at the time the Complaint was filed.

4. **A statement of all existing deadlines, due dates, and/or cut-off dates;**
   a) Trial on 10/23/2023 at 9:00 am; b) motions *in limine* due 8/21/2023, with oppositions due 8/28/2023; c) Pre-marked trial exhibits due 8/28/2023; d) Final Pretrial Conference on 10/17/2023 at 1:00 pm, with counsel and parties to meet in person for at least one hour to discuss settlement prior to such conference; and e) parties to file a letter to advise if they wish to be referred to a magistrate judge for settlement purposes by 7/15/2023. See Order, 7/11/2022 [ECF No. 149].

5. **A statement of any previously scheduled conferences or arguments with the Court that have not yet occurred, and the matters that were to be addressed;**
   Not applicable.

6. **A brief description of any outstanding motions, including the date such motions were filed and the nature of the relief sought;**
   Not applicable.

7. **A statement and description of any pending appeals;**
   Not applicable.

8. **A detailed statement of all discovery to date, including the number of depositions taken by each party and any remaining discovery that is essential in order for the parties to engage in meaningful settlement negotiations;**
   All fact discovery was completed over a year ago. In addition to the depositions of Ms. Hyman, Mr. Fabbri, and Ms. Cohen, all expert discovery was completed early last year, with each side completing all requested depositions of the other side's expert witnesses.

9. **A brief description of the status of prior settlement discussions, without disclosing exact offers and demands;**

A settlement conference was held virtually before the Hon. Sarah L. Cave on May 31, 2022. After reviewing the parties' confidential submissions and spending several hours with the parties and counsel, a settlement was not reached as the parties were too far apart.

10. **A statement of whether the parties have discussed employing alternative dispute resolution mechanisms and whether the parties believe that (a) a settlement conference before a Magistrate Judge; (b) participation in the District's Mediation Program; and/or (c) the retention of a private mediator would be productive and, if so, when (*e.g.,* within the next 60 days, after the deposition of the plaintiff is completed, at the close of fact discovery, etc.);**

Plaintiff is willing to again employ any of the above mentioned alternative dispute resolution mechanisms proposed by the Court. Defendant is willing to attempt such measures only if Plaintiff's Counsel indicates that the Plaintiff's desired settlement is substantially lower than the amount she previously sought. Failing that, it is respectfully submitted that further efforts of settlement will be a time-waster for both sides.

11. **An estimate of the length of trial; and**
    6-8 days.

12. **Any other information that the parties believe may assist the Court in advancing the case, including, but not limited to, a description of any dispositive or novel issue raised by the case.**

The Defendant wishes to raise the possibility of moving for Summary Judgment as to certain issues in or aspects of the case. The Defendant did not do so before the due date set forth in previous scheduling orders for reasons not involving intentionality. Because the Defendant believes that such Motion could aid in the resolution of some of the issues in this case – thereby eliminating them from trial – he would welcome that opportunity before the October 2023 trial date.

Plaintiff again objects to Defendant's ongoing requests to belatedly file a summary judgment motion. See ECF No. 152. The Court has already denied Defendant's identical prior request to file a belated summary judgment motion. By Order dated August 12, 2022 the Hon. Analisa Torres, USDJ, unequivocally held: "[A]s the Court has already stated, the time for pre-motion letters for summary judgment has long since passed. ECF No. 148. Defendant's request for a deadline by which to file a pre-motion letter is DENIED." ECF No. 153.

Thank you for Your Honor's kind attention to this matter.

| HARRINGTON, OCKO & MONK, LLP | KHAN JOHNSON, LLP |
|---|---|
| /s/  Kevin J. Harrington | /s/  Murad Michael Khan |
| By: Kevin J. Harrington, Esq. | By:  Murad Michael Khan, Esq. |